# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00792-SCT

## CONSOLIDATED WITH

## NO. 98-CA-00100-SCT

*JOSEPH HENRY STEINWINDER, JR. AND CYNTHIA MYRICK STEINWINDER*

*v.*

*THE AETNA CASUALTY AND SURETY COMPANY*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/1997 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DEAN HOLLEMAN |
| | BILLY W. HOOD |
| | RODNEY D. ROBINSON |
| ATTORNEY FOR APPELLEE: | JOHN ROGER MILLER |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 8/19/1999 |
| MOTION FOR REHEARING FILED: | 08/31/99; denied 10/07/99 |
| MANDATE ISSUED: | 10/14/99 |


**BEFORE SULLIVAN, P.J., BANKS, AND WALLER, JJ.**


**PER CURIAM:**


¶1. A majority of the court agrees that the judgment of the trial court must be reversed but fails to agree on the disposition thereafter. Because we cannot agree on any instructions to guide the lower court, we remand the case to be decided on such principles as the trial judge may deem right. *See **McNutt v. Lancaster**,* 17 Miss. 570 (1848).

**BANKS, JUSTICE, DELIVERS THE FOLLOWING OPINION.**

¶2. In this case, we are faced with the question of whether uninsured motorist coverage extends to the shareholders/officers of a corporation when the corporation is the only named insured under a corporate policy. Following the majority of jurisdictions which have been faced with this issue, we conclude that a shareholder is not entitled to uninsured motorist coverage in such instances solely by virtue of his status as a shareholder. In this present case, however, factual issues exist as to the extent of coverage agreed on by the parties which make a grant of summary judgment in favor of the insurer improper. Accordingly, the summary judgment below in favor of the insurer is reversed, and this case is remanded for further proceedings consistent with this opinion.

# I.

¶3. Steinwinder Enterprises, Inc. (SWI) is a corporation owned and operated by Joseph Steinwinder, Sr. (Joe, Sr.); his wife, Kit; their son, Joseph Steinwinder, Jr. (Joe, Jr.); and his sister. While SWI's principal place of business is Gulfport, Mississippi, its business as a wholesale distributor requires extensive travel both nationally and internationally. On July 13, 1990, Joe Steinwinder, Jr., was injured while in Chicago, Illinois on business when the taxi cab in which he was a passenger collided with another vehicle.

¶4. SWI possessed insurance coverage with Aetna Casualty and Surety Company. The insurance policy was acquired by Joe, Sr. for SWI through Sam Readman, an Aetna agent who had been SWI's insurance agent for about twenty-five years. The policy with Aetna was first acquired by Joe, Sr. around 1989 in the name of SWI. Under the policy in effect at the time of the accident, SWI carried a Worker's Compensation, Employer's Liability and a Business Auto Policy. SWI possessed uninsured motorist coverage in the amount of $300,000 for its business auto, one 1990 Ford truck. This amount had been changed from a $25,000 mistaken uninsured coverage limit upon renewal in 1990. The named insured under the policies was SWI.

¶5. As a result of the Chicago accident, Joe, Jr. made a claim for uninsured motorist coverage under the business auto policy. Aetna denied the claim on the basis that he did not qualify as an insured for uninsured motorist coverage under this policy. This denial provided grounds for a complaint filed by Joe, Jr. and his wife Cynthia. Cross-Motions for Summary Judgment were filed by both parties. After hearing on the motions, the trial court granted Aetna's summary judgment motion by order on February 7, 1997, holding that Joe, Jr. was not entitled to uninsured motorist benefits

under the policy issued to SWI. Subsequently, Joe, Jr. filed a Motion to Alter, Amend or Clarify the trial court's order which the court denied on May 20, 1997.

¶6. Aggrieved, Joe, Jr. and Cynthia appealed to this Court for relief. Joe, Jr. filed Notice of Appeal to the Harrison County Circuit Court on June 20, 1997, one day after the deadline for filing such notice. On June 21, 1997, Joe, Jr. filed a motion to extend time for filing notice of appeal. After hearing on the motion, the trial court granted the motion by order dated January 14, 1998, finding the delay was the result of excusable neglect and extending the time for filing for period of ten days after the order date. Joe, Jr., thereafter filed a Re-Notice of Appeal on January 22, 1998.

## **II**.
### *a*.

¶7. This Court employs a de novo standard of review when reviewing a lower court's grant of summary judgment. ***Box v. State Farm Mut. Auto. Ins. Co.***, 692 So. 2d 54, 55 (Miss. 1997) (citing ***Mississippi Farm Bureau Cas. Ins. Co. v***. ***Curtis***, 678 So. 2d 983 (Miss. 1996). Evidentiary matters are viewed in the light most favorable to the nonmoving party, and if any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. ***Id***.

### *b*.

¶8. The Steinwinders contend that an officer and employee of a closely held family corporation is entitled to uninsured motorist coverage under the corporate policy for an accident which occurred while on company business, although not in a vehicle designated under the corporate policy. They assert that because Joe, Jr. was an officer and employee of SWI, acting in the scope of his employment while in Chicago, he falls within the uninsured motorist coverage under SWI's business auto policy, regardless of the fact that he was not in a covered auto. Aetna first counters that this appeal should be dismissed because the Steinwinders' Notice of Appeal was not timely filed pursuant to Rule 4 of the Mississippi Rules of Appellate Procedure.[1] Aetna also argues that summary judgment was proper because under the terms of the policy, Joe, Jr. was not a named insured.

¶9. While the trial court allowed the Steinwinders an extension to file their appeal based on excusable neglect, Aetna argues that the reasons presented by the Steinwinders did not constitute excusable neglect. Aetna, however, makes this argument on appeal to this Court without first filing a cross-appeal. For an appellee to raise an argument other than in response to the appellant, the appellee must comply with the requirements for filing a cross appeal with this Court. ***Morrow v. Morrow***, 591 So. 2d 829, 832 (Miss. 1991).

Failure to file a notice of cross-appeal is usually considered fatal. ***Lindsey v. Lindsey***, 612 So. 2d 376, 378 (Miss. 1992). Where an appellee raises an issue not raised by the appellant without filing a notice of cross-appeal, it is within this Court's discretion to address the issue. ***Morrow***, 591 So. 2d at 832. We decline to address the issue.

## *c.*

¶10. It is a fundamental requirement that before a person is entitled to recover uninsured motorist coverage, they must first prove that they are an insured under the insurance policy or the uninsured motorist statute. ***Johnson v. Preferred Risk Auto. Ins. Co.***, 659 So. 2d 866, 871 (Miss. 1995).

¶11. The language in the Uninsured Motorist Coverages section of the policy in this case provides:

> We [Aetna] will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured or property damage caused by an accident.
>
> WHO IS INSURED:
>
> 1. You
>
> 2. If you are an individual, any family member
>
> 3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss, or destruction.
>
> 4. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.

¶12. Under the Mississippi Uninsured Motorist Coverage Statutes, an insured is defined as follows:

> [t]he term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent,

expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. . . .

Miss. Code Ann. § 83-11-103(b)(1991).

¶13. In the present case, Joe, Jr. was not designated as a named insured, nor was he occupying a vehicle designated under the policy. To be entitled to coverage, Joe, Jr. would have to qualify as a family member, which is defined in the policy as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." The Steinwinders rely on *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550 (Miss. 1998), for the proposition that Joe, Jr., is entitled to uninsured motorist coverage under SWI's policy with Aetna.

¶14. In *J & W Foods*, the Court was faced with the question of whether the mother of a shareholder in a closely held corporation qualifies as an insured pursuant to an uninsured/underinsured motorist provision in an insurance policy where the corporation is the named insured. *Id* at 551. The Court held that the record was insufficient to support a judgment on the pleadings in the favor of the insurer, concluding that in deciding whether one is an insured under an insurance contract, it must first be determined whether the policy provision is ambiguous. *Id* at 552. This is done by looking at the policy as a whole, and if there is an ambiguity within the policy then the intention of the parties should be based upon what a reasonable person placed in the insured position would have understood the terms to mean. *Id.* at 552. The Court did not rule specifically on whether shareholders would qualify as an insured when the policy is in the corporate name.

¶15. The policy language in the present case was not ambiguous. The policy clearly listed SWI as the named insured, and no individuals were listed for coverage under this section. There does appear, however, to be some question as whether Aetna's agent represented to SWI that the officers would possess uninsured motorist coverage, even in uncovered autos, while traveling in the course of employment. The Steinwinders assert that when the coverage was purchased from Agent Readman, Joe, Sr., acting on behalf of SWI, expressed to Readman that because the business required extensive travel, uninsured motorist coverage on officers and employees during travel was desired. The Steinwinders further contend and Joe, Sr.'s deposition testimony was that Readman informed SWI that uninsured motorist coverage would follow its officers while on business for the company, even if not occupying a vehicle specifically insured through the policy. Agent Readman testified in his deposition that he did represent to SWI that the officers would be covered for uninsured motorist coverage when traveling in the course of business for SWI. He admitted that he failed to indicate to SWI the need for it to submit a special endorsement for the officers to be covered.

Readman asserted that he was not aware of the need for any such endorsement or that the officers had to be specifically named as an insured and that he believed the officers were covered for uninsured motorist coverage when in the course of employment for SWI. Readman was also of the opinion that Joe, Jr., a passenger in a Chicago, Illinois, taxicab when the accident occurred, would have uninsured motorist coverage and that his understanding was that the coverage extended to vehicles other than the covered auto.

¶16. Miss. Code Ann. § 83-17-1 (1991) provides, in pertinent part that:

> Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance. . . .or who shall receive a policy or deliver a policy of insurance of any such company or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance. . . .shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract . . . .

¶17. Knowledge acquired by a soliciting agent in the course of his employment in soliciting insurance, preparing and transmitting applications, delivering policies, etc. is ordinarily imputed to the company. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1180 (Miss. 1990). While there is nothing in the record to suggest Aetna was aware of Readman's actions in procuring the policy with SWI, Readman's knowledge of SWI's intent, coupled with his representations to SWI, make summary judgment on behalf of Aetna in this case improper. Based on the representations of Aetna's agent, SWI and Joe, Sr. thought that officers and shareholders would be covered under the business policy. To support this belief, the record reflects that SWI increased the coverage limits. Therefore, questions of material fact as to the extent of coverage in this case prevent summary judgment in favor of Aetna.

### d.

¶18. Because the question was not answered by *J & W Foods* and because factual issues prevent a determination of whether coverage should be allowed in the present case, the Court takes this opportunity to determine whether a shareholder/officer is an insured when the only named insured is the corporation.

¶19. The majority of jurisdictions that have been faced with similar issues hold that when the corporation is the named insured, coverage does not extend to individuals. In *General Ins. Co. v. Icelandic Builders, Inc.,* 604 P.2d 966 (Wash. Ct. App. 1979), a closely held corporation maintained uninsured motorist coverage on a vehicle. The

son of the sole shareholder, injured in an accident while in his personal vehicle, attempted to recover under the corporate insurance policy. The insurer then filed suit seeking a declaratory judgment of no coverage. The trial court found no coverage and the Washington Court of Appeals affirmed, ruling that the corporation alone was the named insured. *Id.* at 968. A Hawaii appellate court held that a corporation's sole shareholder, officer and director, involved in an accident on his personal moped, was not entitled to underinsured motorist coverage. *Foote v. Royal Ins. Co.*, 962 P.2d 1004, 1006-08 (Hawaii Ct. App. 1998). The court reasoned that the policy language of "you" and "your" within the business auto policy clearly referred to the named insured, and common sense dictates that a reasonable layperson knows that a corporation does not have relatives or family members. *Id.*

¶20. In *Cincinnati Ins. Co. v. R. Russell Builders, Inc*., No. 96-C-00249, 1997 WL 349991 (N.D. Ill. 1997), an Illinois federal district court held that a corporate secretary, who was not a named insured under a policy listing the corporation as the only named insured and who was not driving a covered auto, was not entitled to underinsured motorist coverage. *Id* at *4-*6. A Florida appellate court has also held that under a policy with the corporation as the named insured, the sole shareholders were not eligible for uninsured motorist coverage, following the rule that corporations are legal entities separate and distinct from the persons comprising them. *American States Ins. Co. v. Kelley*, 446 So. 2d 1085, 1086 (Fla. Ct. App. 1984). The Florida Supreme Court had previously determined that corporate shareholders and employees must be specifically named in the policy. *Id*. at 1086 (citing *Travelers Ins. Co. v. Bartoszewicz*, 404 So. 2d 1053 (Fla. 1981). Various other states addressing this issue have also found noncoverage. *See Bryant v. Protective Cas. Ins. Co.*, 554 So. 2d 177, 178-79 (La. Ct. App. 1989) (finding coverage also did not extend to employees of corporation under policy listing corporation as the named insured when not in a covered auto); *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455 (Tex. 1997).

¶21. In all of the aforementioned cases, there was policy language similar to the policy in this case--corporate policies listing only the corporation as named insured with "you" (the named insured) defined as "who is an insured" under the policy. There is little justification for holding otherwise. Those sophisticated enough to do business in the corporate form should be charged with the knowledge that corporations are, in law, a separate entity and that in order to extend coverage to others absent unusual circumstances or contrary representations, such others, corporate or human, should be named. Accordingly, this Court adopts the holding of the majority of jurisdictions and concludes that a corporate shareholder is not solely by virtue of being a shareholder entitled to uninsured motorist coverage under an insurance policy where the corporation is the only named insured.

## III.

¶22. The Steinwinders assert that SWI and Joe, Sr. were entitled to rely on the assurances of Readman, an Aetna agent, that uninsured motorists coverage would extend to SWI's officers while traveling on business for SWI even if not occupying a covered auto. Addressed *supra*, there is evidence that Readman, who had been SWI's insurance agent for a number of years, did make such assurances to SWI. In dealing with the agent, it is reasonable to believe that SWI would rely on the representations of Readman as to coverage under its policy. This presents a triable issue of material fact making summary judgment improper. *See **Box** at 56*.

## IV.

¶23. In their final assignment of error, the Steinwinders argue that the insurance policy should be reformed to meet the expectations of the insured and the representations of the insurance company concerning uninsured motorist coverage of individual officers. The Steinwinders assert that due to mutual mistake, the insurance policy should be reformed.

¶24. The general rule in this state and elsewhere is that reformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where the mistake is on the part of one party and fraud or inequitable conduct on the part of the other. *Johnson v. Consolidated Am. Life Ins. Co.*, 244 So. 2d 400, 402 (Miss. 1971). In order to reform a contract upon the ground of mutual mistake, there must have been mutual mistake and not merely a mistake of one of the parties. *United States Fidelity & Guar. Co. v. Gough*, 289 So. 2d 925, 927 (Miss. 1974). Proof must establish mutual mistake beyond a reasonable doubt. *Hartford Fire Ins. Co. v. Associates Capital Corp.*, 313 So. 2d 404, 408 (Miss. 1975).

¶25. Readman testified in his deposition that he believed coverage would extend to the shareholders and officers of SWI at all times during business travel and that his understanding of the policy was that uninsured motorist coverage extended to other vehicles the insured traveled in. It was SWI's and Joe, Sr.'s intent that the coverage follow its shareholders and officers in such instances as well. SWI also made certain that its policy limit was increased from $25,000 to $300,000, due in large part to the extensive travel of its officers. Hence, both SWI and Readman thought the uninsured motorist coverage extended to the officers. The policy, however, did not reflect uninsured motorist coverage to the shareholders and officers as SWI had intended. The evidence may be amenable to a conclusion that the insurance contract should be reformed because of mutual mistake of the parties. *See Lititz Mut. Ins. Co. v. Miller,*

210 Miss. 548, 50 So. 2d 221 (1951) (insurance contract reformed to reflect intention and understanding of the parties); *See also* **Davidson v. State Farm Mut. Auto. Ins. Co.**, 373 N.W.2d 642, 647 (Minn. Ct. App. 1985) (insurance policy which failed to reflect the intentions of the parties reformed based on mutual mistake).

## V.

¶26. For the foregoing reasons, the grant of summary judgment to Aetna is reversed and this case is remanded for further proceedings consistent with this opinion.

¶27. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J., AND WALLER, J., JOIN THIS OPINION. COBB, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING, DELIVERS THE FOLLOWING OPINION:**

¶28. The majority carte blanche precludes shareholders and officers from claiming insurance benefits from corporate insurance policies in which the closely held corporation, Steinwinder Enterprises, Inc. [SWI], was the sole named insured. The majority seems to ignore the fact that corporate officers are members of the corporation and therefore should be entitled to benefits of the policy. Every named insured should be covered by uninsured motorist insurance. Here, the sole named insured is an artificial person, a corporation, which can only act through its officers, directors, employees, and agents. A corporation may not be hurt. Hence, coverage of a corporation, at least one which is closely held, inherently means coverage of the corporate officers and shareholders. Otherwise, the insurance is a meaningless subsidy to the insurance company. If, as the majority holds, officers and shareholders are not covered under a corporation's policy, who is?

¶29. In **Cossitt v. Nationwide Mut. Ins. Co.**, 551 So. 2d 879 (Miss. 1989), we applied a church's insurance coverage on two other buses not involved in the accident to that of the church members and passengers of the bus at issue in the case. Relatively the same uninsured motorist coverage language used in the Nationwide policy was found in this case. Hence, the same principle employed in **Cossitt** should be applied here. The corporation's policy should cover its officers. Further, in **J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.**, 723 So. 2d 550 (Miss. 1998), this Court reviewed another policy language case in which a closely held corporation is the named insured. We pointed out that the case should be reversed and remanded for factual development

because "[t]he corporation and its shareholders may have expected that individuals would be covered under the policy." *See id.* at 553. In the instant case, SWI explicitly wanted uninsured motorist coverage for its officers, directors, and employees.

¶30. This case deals solely with officers, yet the majority extends the policy coverage preclusion to both officers and shareholders. What good then is the policy? Who is to benefit from the coverage? Did SWI get complete and full coverage for the premium charged? Obviously not. In this case the injured officer was on a business call for the corporation. What more corporate behavior is there? The majority has rendered ineffective the corporation's attempt to gain uninsured motorist insurance coverage.

¶31. The insurance company will not allow a policy to be given at the time it is taken out with the agent. The policy is an adhesion contract, and the forms are already printed. Why cannot such forms be presented when the insurance is purchased so that each party obtains proof of what coverage is obtained? The insurance agent said there would be coverage and ordered the form contract from his company. Aetna should be held accountable. SWI paid for insurance in hopes of covering the "human capital" that allows it to remain a going concern. The corporation may not be hurt itself, so there is no other reason to purchase such insurance. It would not be reasonable to force corporate officers to take out individual insurance for harm caused while conducting the corporate business. The corporation should receive the benefits of the policy for which it paid. Such does not occur under the majority's holding. Therefore, I dissent because I would hold the corporate officer insured.

## MILLS, JUSTICE, DISSENTING, DELIVERS THE FOLLOWING OPINION:

¶32. I respectfully dissent. This appeal should be immediately dismissed. The Steinwinders' Notice of Appeal was untimely filed according to Mississippi Rule of Appellate Procedure 4(a) which states in pertinent part:

> . . . in a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to the Supreme Court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.

¶33. The Steinwinders filed their Notice of Appeal on June 20, 1997. The thirty-day appeal period expired June 19, 1997, since the lower court's order denying the plaintiff's Rule 59 Motion was entered May 20, 1997. Pursuant to Rule 4(g), the Steinwinders filed a Motion to Extend Time for Filing Notice of Appeal on July 21, 1997, claiming excusable neglect. In this situation, it is within the Court's discretion to

address the issue. ***Morrow v. Morrow***, 591 So.2d 829, 832 (Miss. 1991). However, the majority declines to deal with this issue, thereby weakening a very simple procedural rule.

¶34. We have previously held that excusable neglect is not: (1)counsel's failure to learn of entry of the judgment; (2)counsel's failure to read published rules of court; (3) counsel's reliance on mistaken legal advice from the trial court; or (4) counsel's busy trial schedule. ***Guthrie v. Renfroe***, 703 So.2d 846, 848 (Miss. 1997)(citing ***In Re Estate of Ware***, 573 So.2d 773, 775 (Miss. 1990)).

¶35. The attorney for the Steinwinders gave the following explanation for his failure to timely file the Notice of Appeal:

> Calculating the days, I calculated that from May 20th I had until June 20th, 1997, within which to file the appeal. I marked it on my calendar.
>
> . . . I did prepare the notice of appeal
>
> . . .
>
> It was my understanding and my thought that it had actually been filed on June 20th, 1997, the notice of appeal to the Mississippi Supreme Court . . . .

The problem seems to lie in the fact that the month of May contains not thirty, but thirty-one days. The miscalculation on the part of the Steinwinders' attorney indicates failure to read and understand the published rules of court. This neglect does not meet the standard for excusable neglect, and I would therefore dismiss this appeal pursuant to our precedents.

## PITTMAN, P. J., AND SMITH, J., JOIN THIS OPINION.

1. "In a civil case. . . .in which an appeal or cross appeal is permitted by law as of right from a trial court to the Supreme Court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from. . . . (c) if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires."