919 So.2d 278 (2005)
Louis C. MATTHEWS and Roosevelt Jones, Appellants,
v.
HORSESHOE CASINO, Appellee.
No. 2004-CA-00911-COA.
Court of Appeals of Mississippi.
September 6, 2005.
*279 D.L. Jones, Jackson, attorney for appellants.
William O. Luckett, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Louis Matthews and Roosevelt Jones (Appellants) filed an action against Horseshoe Casino, alleging multiple damages as a result of injuries sustained while working on an electrical device which was owned by Horseshoe. In response, Horseshoe filed a motion for summary judgment which was subsequently granted by the trial court. Aggrieved, Appellants now appeal the trial court's grant of summary judgment in favor of Horseshoe.
¶ 2. We have thoroughly reviewed the record and find no reversible error. Therefore, we affirm the trial judge's ruling.

FACTS
¶ 3. In July 2000, appellants were injured while working on an electrical device at the Horseshoe Casino in Tunica, Mississippi. At the time of the accident, Appellants were employees of A & B Electric, a subcontractor of White Construction Company (White). White had been retained as an independent contractor by Horseshoe to perform the particular project. After the accident, Appellants received workers' compensation benefits which were provided through their employment with A & B Electric.
¶ 4. In December 2002, Appellants filed an action against Horseshoe and White seeking damages for their injuries. In response, Horseshoe and White each filed summary judgment motions denying liability, and White was subsequently dismissed from the suit due to the exclusivity provisions of the workers' compensation statute.[1] Appellants, however, continued to maintain that Horseshoe was responsible for their injuries. A hearing was held on *280 Horseshoe's summary judgment motion, and the trial judge entered an order finding that Appellants failed to prove that Horseshoe maintained control over the work project that gave rise to their injuries.

ANALYSIS AND DISCUSSION OF THE ISSUE

Standard of Review
¶ 5. The law is well established with respect to the grant or denial of summary judgment motions. A summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. Rule 56(c). "All that is required of an opposing party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule." Lowery v. Guaranty Bank and Trust Company, 592 So.2d 79, 81 (Miss. 1991) (citing Galloway v. Travelers Insurance Co., 515 So.2d 678, 682 (Miss.1987)). "In determining whether the entry of summary judgment [is] appropriate, [appellate courts] review the judgment de novo, making [their] own determination on the motion, separate and apart from that of the trial court." Lowery, 592 So.2d at 81. "The evidentiary matters are viewed in the light most favorable to the nonmoving party." Id. "If after this examination, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is affirmed, but if after examining the evidentiary matters there is a genuine issue of material fact, the grant of summary judgment is reversed." Lowery, 592 So.2d at 81 (citing Newell v. Hinton, 556 So.2d 1037, 1041 (Miss.1990)).
¶ 6. Appellants first contend that the trial court erred in striking the affidavit of Damon Wall, an associate professor of electrical engineering at the University of Mississippi. They contend that Wall's affidavit was based upon his personal knowledge and provided a sufficient expert opinion as to the cause of the fire that resulted in their injuries. Horseshoe, however, argues that Wall's affidavit was insufficient because it failed to address the central issues of liability and control.
¶ 7. Wall's affidavit, which was presented by Appellants in response to Horseshoe's motion for summary judgment, states:
My name is Damon Wall. I am the [sic] Associate Professor Emeritus of Electrical Engineering at the University of Mississippi. I am familiar with the switchgear fire in Tunica Mississippi at Horshoe[Horseshoe] Casino that happened in July 2000. I have read the relevant materials in regards to said fire and examined the switchgear involved in said fire. It is my professional opinion that fault lies in allowing installation of equipment under live ("hot") electrical conditions.
The trial judge found that Wall's affidavit was conclusory in nature and failed to meet the requirements set forth in Rule 56(e) of Mississippi Rules of Civil Procedure.
¶ 8. We agree. Rule 56(e), which addresses the use of affidavit testimony in summary judgment motions, provides in pertinent part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." Here, although Wall opined as to the possible cause of the accident, he *281 failed to address certain central issues that were essential to the resolution of the case, such as which party was responsible for Appellants' injuries and which party maintained control over the work site. As a result, Wall's affidavit was wholly insufficient to create a genuine issue of fact for consideration by the jury. Therefore, the affidavit was properly stricken by the trial court.

Control Over Work site
¶ 9. Appellants next argue that a genuine issue of fact existed as to whether Horseshoe relinquished unfettered control of the work site. In support of their argument, Appellants rely on the deposition testimony of Samuel A. Marshall, Horseshoe's Vice President of Design and Construction.
¶ 10. Marshall, who served as the liaison between Horseshoe and White, testified that he regularly communicated with Guy White and Billy Waxter, White's vice president and job site superintendent, respectively. Marshall also stated that he periodically discussed the job's progress with Waxter, but did not act as his supervisor, nor did Waxter consult him for permission in carrying out the duties of the project. Marshall further testified that Horseshoe and White generally coordinated on issues such as shutting down the power and water supply and allowing ingress and egress from the work site.
¶ 11. Appellants maintain that Marshall's testimony clearly reveals that a decision to turn off the power supply which subsequently led to their injuries would have first required Horseshoe's approval. They properly contend that the critical question in determining Horseshoe's liability is whether it maintained any right of control over the performance of the work giving rise to their injuries. See Magee v. Transcontinental Gas Pipe Line, Corp., 551 So.2d 182, 186 (Miss.1989).
¶ 12. However, we find that Marshall's testimony was insufficient to create a genuine issue of fact as to whether Horseshoe maintained control over the work site. Although Marshall periodically discussed the job's progress and coordinated certain issues with White, the record clearly indicates that White, nevertheless, maintained control over the manner and method by which the job was to be performed. Marshall testified that he did not act as a supervisor over the project, nor was he consulted for permission in carrying out the duties of the project.
¶ 13. Similarly, the contract between White and Horseshoe further supports this contention. The contract specifically provided in pertinent part that:
The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper and diligent prosecution of the work, and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project. In the event of a labor dispute, the Contractor shall not be entitled to any increase in the Cost of the Work. Article 2, No. 15
The contract also stated that:
It is not incumbent upon the owner to notify the Contractor when to begin, to cease or resume work, nor in any way to superintend so as to relieve the Contractor of responsibility or of any consequence of neglect or carelessness by it or its subordinates. All material and labor shall be furnished at such time as shall be for the best interest of all contractors concerned, to the end that the combined work of all may be properly and fully completed in accordance with the approved schedule. Article 2, No. 26
¶ 14. Under the terms of the contract, White assumed full responsibility for the *282 hiring of its employees and for the work to be performed pursuant to the contract. Thus, complete responsibility over the work project was delegated to White. Furthermore, we note that there is nothing in the record to suggest that a request was ever made by White for Horseshoe to terminate the power to the work site and that Horseshoe refused that request. As such, we find that the trial court's grant of summary judgment in favor of Horseshoe was proper.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The trial court found that White was a statutory employee under the workers' compensation statute and was therefore entitled to immunity from Appellants' suit. Appellants also conceded that White, as a general contractor, received immunity under the statute.